L. W. & P. ARMSTRONG ET AL., Complainants,

*v.*

ISABEL LOPEZ CRUZ ET AL., Dfts.

SOBRINOS DE EZQUIAGA, Interveners.

San Juan, Equity, No. 1092.

Opinion filed February 1, 1923.

*Mr. Jaime Sifre, Jr.,* counsel for complainants.

*Mr. O. B. Frazer,* counsel for the seven minor heirs, defendants.

*Mr. Frank H. Dexter,* counsel for interveners.

ODLIN, Judge, delivered the following opinion:

Shortly after the appointment of a receiver in the proceeding brought by Armstrong et al. against the widow and heirs of the deceased Enrique Bird, there intervened in this proceeding the Sobrinos de Ezquiaga and asked leave for the foreclosure of a certain mortgage which had been executed by the widow on her own behalf and by all the heirs of full age, and also on behalf of the minor defendants, which mortgage covered a portion of the real estate owned by the deceased Enrique Bird at the time of his death, this mortgage being originally for the sum of $75,000, $25,000 of which was paid before the filing of the petition for intervention, and it being claimed that the remaining $50,000 with interest is past due and unpaid.

No defense has been made to this foreclosure proceeding except on behalf of the seven children of the deceased Enrique Bird who are under twenty-one years of age. As to these seven children under twenty-one years of age, it is conceded that two had married and were thus emancipated at the time the mortgage was executed, two were over fourteen years of age, and the other three under fourteen years of age. Counsel for these seven defendants is opposing the foreclosure of this mortgage and is asking that the petition to foreclose the mortgage be dismissed, in support of his position setting forth six grounds which have been argued both orally and by very elaborate briefs. These grounds I shall touch upon in their order.

1. It is claimed by counsel for the seven minor defendants that the Sobrinos de Ezquiaga have failed to allege in their petition to foreclose that the mortgage in question was exe-

cuted in their favor, and that they also have failed to prove that such mortgage was executed in their favor. The court is satisfied that counsel for the seven minor defendants did not examine with his usual care the allegations of the bill or the mortgage itself. I find on examining this mortgage that it sets forth in detail the promissory note made payable to the Sobrinos de Ezquiaga or order, and then there follows a statement that the mortgage itself is executed as security for that note. The proof submitted shows that the Sobrinos de Ezquiaga own and hold the mortgage, and I decide that they own the note because the possession of the note by the Bank of Nova Scotia is merely the possession of a pledgee. Under the general rules of equity the promissory note itself constitutes the evidence of indebtedness; the mortgage given as security for such note follows the note. I am satisfied that the first ground of objection presented by counsel for the seven minor defendants is not well taken.

2. Counsel for the minor heirs also claims that Sobrinos de Ezquiaga are not the owners or holders of the mortgage which they seek to foreclose, and that they have no right of action. The evidence clearly showed, to my mind, that Sobrinos de Ezquiaga did own this mortgage at the time that they filed their petition of intervention, and that they owned and hold this mortgage to-day. It is true that they pledged the note to the Bank of Nova Scotia as collateral security for a loan made by the Bank of Nova Scotia to the Sobrinos de Ezquiaga, but the testimony of Mr. Crawford, manager of the Bank of Nova Scotia, shows beyond question that this note is in the possession of the Bank of Nova Scotia solely as collateral security, and that the title to this note is in the Sobrinos de Ezquiaga,

14

for which reason I am convinced that the latter are the owners and holders of the mortgage, that as such they have the right to apply to this court for leave to foreclose, and that the Bank of Nova Scotia is not a necessary party to this proceeding. Of course this court would never grant any decree in this case without the surrender of the note itself.

3. The next ground relied upon by counsel for the seven minors is that the mortgage is invalid because the *prior* authorization of the Insular district court of Humacao, which court possesses probate jurisdiction, was not obtained. It is true that the mortgage itself was executed on December 27, 1920, and that the action of the Insular district judge at Humacao was not taken until December 30, 1920. But the mortgage was not presented to the registrar for recording until January 14, 1921. The fact that the mortgage was prepared three days before the Insular district judge acted is, in my opinion, of no importance. I think the practice is to be approved. It seems to me that the Insular district judge could pass upon a matter of this nature with much more satisfaction to himself if he could examine the instrument, the approval of which is sought. Of course the mortgage would not be effectual until after the approval by the Insular district judge, so far as the rights of the seven minor defendants are concerned; but the point made by counsel for these seven minors that the approval of the Insular district judge should be obtained on a day previous to the execution of the mortgage itself is without force, and therefore I am unable to satisfy my own mind that the third ground is well taken.

4. The fourth ground is that this mortgage is invalid so far as the rights of the two emancipated minors are concerned,

because their mother did not consent to its execution. The very careful brief prepared by counsel for these minors refers to a decision of the supreme court of Porto Rico entitled Félix v. Registrar of San Juan, decided on March 14, 1921, reported in 29 P. R. R. 152. It is conceded that three justices of the supreme court in this case decided that there was consent given by implication on the part of the father of a certain emancipated minor, inasmuch as the father had signed the deed at the same time that the emancipated minor signed it, and consequently the father must have known of the latter's act. Counsel for the minors in the present case now asks me to follow the rule sought to be established by the two dissenting justices, because the law, as he claims is correctly stated by them and not by the three. Even if I agreed with the counsel for the minors in the case now under consideration, that the two dissenting justices had stated the law with more logic than the majority, I would of course not be bound by the minority opinion. But if I had been sitting upon the supreme court of Porto Rico at the time of the decision in the Félix Case, I would have held exactly as the three justices decided. Therefore I must hold that the fourth ground is not well taken.

5. Counsel for the minors in this case insists that this mortgage is invalid with regard to the two minors between fourteen and twenty-one years of age, because they were not physically present in court at Humacao when the proceedings were held in regard to the approval of this mortgage. It is conceded that these two children of the deceased Enrique Bird were at school in the state of Pennsylvania. It would be ridiculous for me to decide that, where minor children of Porto Rican parents are sent to the United States for their education,

and it becomes necessary to place a mortgage upon real estate in Porto Rico owned by their father at the time of his death in order to provide funds for the preservation of such real estate, these children would be obliged to leave their school in the United States, make the long voyage by steamer to Porto Rico, present themselves for twenty minutes in the district court of Humacao, or somewhere else in this Island, and then take a steamer for the long return voyage to their school in the United States again. I cannot believe that such is the law, therefore I must hold that the fifth ground is not well taken.

6. The remaining point made by counsel for the minors in the case now under consideration seems to me to be well taken. I quote it: "Regardless of the validity of the mortgage it would be inequitable to decree a sale of the properties at this time." Of course I construe this as meaning that if we concede the validity of the mortgage, it would be inequitable to decree a sale of the properties at this time. This is my own view. I do not propose to decree a sale of the properties at this time. I think it would be unwise to do so, because it is so difficult for the court to decide the union of interest between the properties covered by this mortgage and the other properties in the hands of the receiver. The Sobrinos de Ezquiaga will suffer nothing by this court's delaying its decree for a reasonable time until conditions are such as to enable the court to decide with some degree of intelligence whether the various properties owned by Enrique Bird at the time of his death should be offered for sale separately or as one single concern. There is no claim made by the Sobrinos de Ezquiaga that their security is inadequate, or that any loss is likely to arise to them by my refusal to decree a sale and fix a date

■

17

therefor at this time. I can see that the interest of the minors might suffer if I were to direct that the properties covered by this mortgage be sold within the next sixty days.

I therefore hold that the mortgage is valid as to all the heirs of Enrique Bird, deceased, that there is due thereon the sum of $50,000 and interest as provided in the mortgage from the date of the payment of the $25,000 as shown by the testimony, and that the Sobrinos de Ezquiaga are entitled to recover that sum, failure to pay which will entitle the Sobrinos de Ezquiaga to an order of sale, the date of which will be fixed by this court hereafter.

To this ruling counsel for the seven minor heirs excepts.